**Johnnie Lee HUNT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–88–400–CR.

Court of Appeals of Texas,
Corpus Christi.

Oct. 26, 1989.
Discretionary Review Refused
Jan. 17, 1990.

Kenneth W. Smith, Houston, for appellant.

John D. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before NYE, C.J., UTTER and KENNEDY, JJ.

OPINION

NYE, Chief Justice.

Appellant was indicted, and a jury found him guilty of knowingly and intentionally causing William McDaniel's death. The trial court assessed punishment at twenty-five years' confinement in the Texas Department of Corrections. By five points of error, appellant challenges the sufficiency of the evidence, the trial court's failure to grant a mistrial, and the adequacy of the record necessary to prepare his appeal. We affirm.

The State's evidence reveals that McDaniel, the deceased, and Postlethwait were at a lounge. Appellant and his two companions, Melvin Key and James Buzbee, were

also there. An altercation erupted between Key and a patron. McDaniel (the deceased) grabbed a pool stick. He and Postlethwait followed appellant, Key and Buzbee outside. A fight started among all of these individuals. At some point, appellant went to his vehicle and retrieved a pistol. While standing next to his vehicle, he shot and killed McDaniel. Before appellant fired, he told Key and Buzbee to get into his vehicle. They ran towards the vehicle while McDaniel stood still. Some State's witnesses placed McDaniel between twenty-five and thirty-five feet from appellant. McDaniel had his pool stick resting on the ground and did not have it in a position to be swung. McDaniel stood far enough away from appellant, Key and Buzbee that he could not have touched them with his pool stick. The evidence shows McDaniel was fifty years old, weighed 169 pounds and stood about five feet six inches tall.

The defense put on evidence showing that during the altercation inside the lounge, appellant was twice struck with a pool stick. Before appellant fired his weapon, McDaniel was about to strike Buzbee with his pool stick. Buzbee dodged the blow and McDaniel headed towards appellant. Appellant saw McDaniel running towards him with a pool stick. He shot McDaniel at a distance of fifteen to twenty feet. After the shooting, appellant drove away with his two companions. The morning after the shooting, a doctor treated appellant for a head wound. The evidence showed that appellant, Key and Buzbee were in their mid-twenties.

Appellant, in his first point of error, challenges the sufficiency of the evidence to support his conviction. Appellant argues that he acted in self-defense or alternatively in defense of a third person when he shot McDaniel. He contends that he established these defenses as a matter of law. The trial court instructed the jury on the law of self-defense and the law of defense of a third party.

■ The State is required to disprove a defense beyond a reasonable doubt after the issue has been properly raised by the evidence. *Torres v. State,* 751 S.W.2d 705,

707 (Tex.App.—Corpus Christi 1988), *pet. ref'd,* No. 804–88 (Tex.Crim.App. May 3, 1989) (not yet reported). In other words, the accused bears the burden of producing evidence to raise a defense, but the State has the final burden of persuasion to disprove the defense. *See Gold v. State,* 736 S.W.2d 685 (Tex.Crim.App.1987).

■ According to the holding in *Gold,* a jury's disbelief of an accused's testimony is not alone sufficient to conclude on appeal that the State disproved the accused's self-defense or defense of third person assumptions. As the Court did in *Gold,* we review *all* the evidence in the light most favorable to the State, which allows a presumption that the jury invoked its prerogative to discount appellant's testimony as self-serving, to determine if a reasonable jury could have found the absence of the claimed defenses beyond a reasonable doubt.

■ In the instant case, the State offered evidence to show the events leading up to the time McDaniel was shot. This evidence shows that at the time appellant shot McDaniel, McDaniel had his pool stick resting on the ground and did not have it in a position to be swung. Furthermore, McDaniel in the position where he was standing, could not have touched appellant, Key or Buzbee with his pool stick. Appellant stood next to his vehicle when he fired the shot that killed McDaniel. One of the State's witnesses indicated that McDaniel stood over fifteen feet from appellant. Other State's witnesses placed him between twenty-five and thirty-five feet from appellant. Evidence showed that appellant did not seek medical attention once the shooting occurred. Instead, he drove away in his vehicle and did not visit a doctor until the morning following the shooting. The evidence also shows the age difference between McDaniel, who was middle-aged, and appellant, Key and Buzbee, who were all in their twenties.

The jury was able to consider the age differences between the men, McDaniel's conduct prior to and during the shooting, the conduct of appellant, Key and Buzbee prior to and during the shooting, appel-

lant's acts following the shooting, the severity of appellant's wounds, and the ability of appellant to retreat, in determining whether appellant's use of deadly force was justified. *See Carter v. State*, 515 S.W.2d 668 (Tex.Crim.App.1974); *Torres*, 751 S.W.2d at 708. When all these factors are considered, we find that the evidence was sufficient to support the jury's findings that appellant did not act either in self-defense or in defense of a third person.

By point two, appellant argues the trial court erred by refusing to grant his request for a mistrial following the State's cross-examination of a defense witness regarding specific acts of his alleged misconduct. Appellant called Mary Gomez as a witness. Appellant asked her if she knew his reputation in the community. Gomez stated that she did. She also said that appellant's reputation was good. Appellant also asked her if she knew his reputation for truth and veracity. She stated that appellant's reputation for truth and veracity has likewise been good. She said that she never knew him to be a "bad boy."

On cross-examination, the State asked her if she knew appellant had been arrested for carrying a weapon in 1982. Appellant objected, and the trial court sustained the objection. The State continued and asked her if she knew appellant had been arrested. Appellant objected, and the trial court sustained the objection. Next, the State asked her if she knew whether appellant had ever been in any trouble. Once again appellant objected, and the trial court sustained the objection. Then, the State asked her whether or not she knew appellant had been arrested for carrying a weapon. Appellant objected and the trial court sustained the objection. At this point, appellant moved for a mistrial, and the trial court denied the motion.

Before Tex.R.Crim.Evid. 405(a) came into being, only evidence of reputation was admissible to prove character; personal opinion was not admissible. *See e.g., Green v. State*, 679 S.W.2d 516, 517 (Tex.Crim.App. 1984); *Beecham v. State*, 580 S.W.2d 588, 590 (Tex.Crim.App.1979). A reputation witness could only testify about what he had heard, not about what he knew or opined. *See Pemberton v. State*, 601 S.W.2d 333, 337 (Tex.Crim.App.1980); *Brown v. State*, 477 S.W.2d 617, 620 (Tex. Crim.App.1972).

Now, however, under Rule 405(a), an accused may offer both reputation and opinion evidence of his good character, and character witnesses may be cross-examined concerning relevant specific conduct. Inasmuch as a character witness may now testify regarding what he knows and what he has heard, it follows that the witness may, on cross-examination, be asked "do you know" questions as well as "have you heard" questions. *Lancaster v. State*, 754 S.W.2d 493, 495 (Tex.App.—Dallas 1988, pet. ref'd). Furthermore, by testifying that she never knew appellant to be a "bad boy," Gomez expressed her opinion and no longer assumed the role of a reputation witness. She testified, in essence, to the lack of a specific act of misconduct.

Appellant nevertheless insists that the State may not question a reputation witness about knowledge of specific instances of alleged misconduct which have not resulted in final convictions. Appellant, however, did not object to the State's questions on this basis. As such, appellant has waived his right to complain of this deficiency on appeal. Tex.R.App.P. 52(a); *Lancaster*, 754 S.W.2d at 496.

By point three, appellant complains that he was denied an adequate record necessary to prepare his appeal. In points four and five, he contends that his constitutional rights were violated because of this incomplete appellate record. After appellant filed his brief, the appellate record was supplemented with the material about which appellant complained was missing. Although appellant was given an opportunity to file an additional brief after the material was filed, he did not do so. Since appellant was not denied a complete record, the premise of his arguments are without merit. We overrule all of appellant's points of error and AFFIRM the trial court's judgment.